```
1  JIMMY GETTINGS, PLAINTIFF, PRO PER                              FILED
2  P.O. BOX 414
3  WINONA, MO. 65588
4  530 243-6867
5  SUN2TALL@GMAIL.COM                                           JUN 2 8 2021
6                     UNITED STATES DISTRICT COURT
                                                              CLERK, U.S. DISTRICT COURT
7                      FOR THE EASTERN DISTRICT              EASTERN DISTRICT OF CALIFORNIA
                                                             BY
8                            OF CALIFORNIA                            DEPUTY CLERK
9
10  JIMMY GETTINGS,              )
11       PLAINTIFF                )          CASE NO: 2:21-CV-1139-JAM-DB (PS)
12                                )
13  VS.                           )
14                                )
15  COUNTY OF SHASTA, CALIFORNIA,)
16  SHASTA COUNTY                 )
17  SHERIFF TOM BOSENKO, SHERIFF)
18  ERIC MAGRINI,                 )
19  SHASTA COUNTY SHERIFF'S       )
20  DEPUTY RYAN KACALEK,          )
21  SHASTA ANIMAL                 )
22  CONTROL OFFICER MOLLY         )
23  ROBERTS)                      )
24  DOES 1-25                     )          COMPLAINT
25       DEFENDANTS               )
26  _____)
```

### BASIS FOR JURISDICTION

UNDER THE DIVERSITY RULE: PLAINTIFF LIVES IN MISSOURI, DEFENDANTS RESIDE IN CALIFORNIA. ALSO THIS ACTION IS A FEDERAL CIVIL RIGHTS VIOLATION.

42 USC 1983 "PROVIDES A CAUSE OF ACTION FOR THE DEPRIVATION OF ANY RIGHTS, PRIVILEGES, OR IMMUNITIES SECURED BY THE CONSTITUTION AND LAWS BY ANY PERSON ACTING UNDER COLOR OF ANY STATUTE, ORDINANCE, REGULATION, CUSTOM, OR USAGE, OF ANY STATE OR TERRITORY." GOMEZ V TOLEDO, 446 US 635, 638 (1980)(INTERNAL QUOTATIONS OMITTED). IN GOMEZ, THE UNITED STATES SUPREME COURT DETERMINED THAT ONLY TWO ELEMENTS MUST BE PLED TO PROPERLY ASSERT A CAUSE OF ACTION UNDER 42 USC §1983. FIRST, THE PLAINTIFF MUST SPECIFICALLY IDENTIFY THE CONSTITUTIONAL RIGHT OF WHICH HE OR SHE WAS DEPRIVED. ID. AT 640. SECOND, THE PLAINTIFF MUST ASSERT THAT "THE PERSON WHO DEPRIVED HIM OF THAT FEDERAL RIGHT ACTED UNDER COLOR OF STATE OR TERRITORIAL LAW." ID.

### FACTS

AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANTS RYAN KACALEK AND MOLLY ROBERTS WERE ACTING UNDER AUTHORITY OF THE SHASTA COUNTY SHERIFF'S DEPARTMENT. EACH DEFENDANT DROVE A COUNTY VEHICLE AND WORE A COUNTY UNIFORM DURING THEIR INTERACTIONS WITH PLAINTIFF.

ON SATURDAY JULY 6, 2019 THE TROUBLE BEGAN FOR THE DEFENDANTS. A SHASTA COUNTY FEMALE ANIMAL CONTROL OFFICER CITED PLAINTIFF A WARNING FOR VIOLATION OF CA. PC 597.4, SELLING AN ANIMAL ON A PUBLIC RIGHT OF WAY.

1

48
49  PLAINTIFF WAS NOT ON A PUBLIC RIGHT OF WAY ON JULY 6, 2019 NOR WAS THERE ANY RECORD OF
50  PLAINTIFF SELLING ANY ANIMALS ON THIS DATE.
51
52  THE FOLLOWING SATURDAY JULY 13, 2019, PLAINTIFF WAS STOPPED AS HE LEFT PRIVATE LAND LOCATED
53  AT THE CORNER OF DERSCH RD. AND AIRPORT ROAD, ANDERSON, CA. DEFENDANT DEPUTY RYAN KACALEK
54  DID STOP PLAINTIFF ON DERSCH ROAD AS PLAINTIFF WAS HEADED EAST-BOUND. DEFENDANT KACALEK
55  DID REQUEST AND RECEIVE PLAINTIFF'S DRIVERS LICENSE, REGISTRATION AND PROOF OF INSURANCE. ALL
56  WAS IN EFFECT AND WITHIN THE STATUTES OF THE STATE OF CALIFORNIA. KACALEK DID NOT ISSUE
57  PLAINTIFF A CITATION FOR ANY VIOLATIONS.
58
59  KACALEK DID FORCE PLAINTIFF TO WAIT FOR THE ARRIVAL OF SHASTA ANIMAL CONTROL OFFICER MOLLY
60  ROBERTS. AFTER DEFENDANT MOLLY ROBERTS ARRIVED SHE DID ISSUE PLAINTIFF A CITATION FOR
61  VIOLATION OF CA PC: 597.4 UNLAWFULLY SELLING ANIMALS ON A PUBLIC RIGHT OF WAY.
62
63  THE FOLLOWING SATURDAY JULY 20, 2019, AT APPROXIMATELY 10:15AM, PLAINTIFF WAS AGAIN STOPPED
64  BY DEFENDANT KACALEK, ON FIG TREE LANE AT THE LOFTUS ROAD INTERSECTION. THIS WAS SHORTLY
65  AFTER PLAINTIFF LEFT THE SAME LOCATION, HE WAS AT, THE PREVIOUS. WEEKEND, DERSCH ROAD AND
66  AIRPORT ROAD, A 4 ACRE FLAT PIECE OF GRASS LAND, PRIVATELY OWED. AGAIN PLAINTIFF WAS ASKED FOR
67  HIS DRIVER'S LICENSE, VEHICLE REGISTRATION, AND PROOF OF INSURANCE. ALL THREE WERE HANDED TO
68  KACALEK, THE SAME THREE ITEMS THAT WAS HANDED TO KACALEK THE PREVIOUS SATURDAY AT THE
69  DERSCH ROAD STOP.
70
71  WHILE WAITING FOR KACALEK, PLAINTIFF WAS APPROACHED BY ANOTHER SHASTA COUNTY DEPUTY. THIS
72  DEPUTY ASK PLAINTIFF SEVERAL QUESTION. PLAINTIFF REPLIED THAT HIS ATTORNEY ADVISED HIM NOT TO
73  SPEAK WITH THE POLICE. THIS DEPUTY ASK WHO WAS PLAINTIFF'S ATTORNEY. PLAINTIFF DID NOT
74  RESPOND. THIS DEPUTY BECAME NOTICEABLY AGITATED.
75
76  AFTER 10 MINUTES WAITING ANIMAL CONTROL OFFICER MOLLY ROBERTS ARRIVED. SHE CAME TO
77  PLAINTIFF'S DRIVER'S SIDE WINDOW AND TOLD PLAINTIFF THAT SHE WARNED HIM ABOUT SELLING
78  CHICKENS. SHE CONTINUED BY STATING, "SEE WHAT HAPPENS WHEN YOU VIOLATE THE LAW."
79  DEFENDANT MOLLY ROBERTS THEN ENTERED PLAINTIFF'S ENCLOSED REAR COMPARTMENT OF HIS FORD F-
80  150 AND REMOVE APPROXIMATELY 59 BABY-CHICKS FROM THEIR CAGE AND PLACED THEM IN HER OWN
81  CONTAINER. AFTER CONVERSING WITH KACALEK SHE PLACED CHICKS IN HER COUNTY VEHICLE AND TOOK
82  THEM TO THE SHASTA COUNTY ANIMAL SHELTER.
83
84  ON THIS JULY 20, 2019 STOP, KACALEK AFTER REVIEWING THE THREE ITEMS IN HIS PATROL CAR, DID
85  APPROACH PLAINTIFF'S 2018 FORD F-150 TRUCK AND ORDER PLAINTIFF OUT OF VEHICLE. KACALEK DID
86  ORDER PLAINTIFF TO TURN AROUND AND PUT HIS HANDS BEHIND HIMSELF. KACALEK DID PLACE HAND
87  CUFFS ON PLAINTIFF HANDS. KACALEK DID PLACE THE CUFFS SEVERELY TIGHT ON PLAINTIFF, AN ELDERLY,
88  SEVERELY DISABLED MAN WITH A NON-CURABLE CRIPPLING DISEASE. PLAINTIFF WAS ESCORTED TO
89  KACALEK'S PATROL VEHICLE AND SEATED IN THE REAR SEAT. PLAINTIFF REMAINED IN THE REAR SEAT FOR
90  MORE THAN ONE HOUR.
91
92  KACALEK TOLD PLAINTIFF WHILE HE WAS SEATED IN THE REAR SEAT OF THE PATROL VEHICLE THAT HE WAS
93  BEING ARRESTED AND TAKEN TO SHASTA COUNTY JAIL, FOR NO VALID DRIVER'S LICENSE, NO VALID
94  REGISTRATION.
95
96  KACALEK DID ORDER A TOWING VEHICLE TO COME AND TOW PLAINTIFF'S TRUCK TO A TOW YARD IN
97  NORTH REDDING, CA. AFTER AN HOUR AND APPROXIMATELY 15 MINUTES OR LONGER AND AFTER THE TOW
98  VEHICLE DID LEAVE WITH PLAINTIFF'S VEHICLE IN TOW, KACALEK DID DO A U-TURN AND PROCEEDED WEST
99  ON FIG TREE LANE WITH PLAINTIFF IN THE REAR SEAT. APPROXIMATELY HALF MILE FROM WHERE
100 PLAINTIFF WAS STOPPED, LOFTUS ROAD AT FIG TREE LANE, KACALEK DID DRIVE TO THE SHOULDER OF FIG

100  TREE LANE. KACALEK DID EXIT THE PATROL CAR AND DIALED HIS CELL PHONE. KACALEK DID SPEAK ON
101  HIS CELL PHONE FOR APPROXIMATELY TEN MINUTES. AFTER SPEAKING ON HIS CELL PHONE KACALEK OPEN
102  THE REAR DOOR OF HIS PATROL VEHICLE AND TOLD PLAINTIFF THAT HE WAS NOT GOING TO JAIL. HE WAS
103  BEING CITED AND RELEASED. KACALEK WAS GOING TO LEAVE PLAINTIFF ON FIG TREE LANE. PLAINTIFF
104  PLEADED TO KACALEK TO TAKE HIM TO AN AREA WHERE HE CAN GET TRANSPORTATION. PLAINTIFF KNEW
105  NO ONE HE COULD CALL FOR HELP SINCE HE HAD NOT LIVE IN CALIF SINCE APRIL 2009. KACALEK SAID HE
106  WOULD TAKE PLAINTIFF TO TRUCK STOP ON BONNEYVIEW. AGAIN PLAINTIFF COMPLAINED AND ASK TO BE
107  DROPPED ON GASPOINT ROAD IN COTTONWOOD. KACALEK SAID HE WAS TOO BUSY TO GO THAT FAR.
108  AFTER PLEADING WITH KACALEK ON THE DRIVE TO THE TRUCK STOP, KACALEK DID RELENT AND TAKE
109  PLAINTIFF TO THE GAS STATION AT I-5 AND GAS POINT ROAD IN COTTONWOOD, CA.
110
111  AFTER EXITING THE PATROL VEHICLE IN COTTONWOOD, KACALEK DIE UNLOCK THE HANDCUFFS AND
112  REMOVE THEM FROM PLAINTIFF. IT WAS LATER DETERMINED BY A MISSOURI PHYSICIAN THAT KACALEK
113  DID FRACTURE PLAINTIFF WRIST WITH THE SEVERELY TIGHT CUFFS.
114
115  AT TRIAL IN OCTOBER OF 2019 FOR THE CITATION OF PC 597.4 ISSUED BY DEFENDANT MOLLY ROBERTS,
116  PLAINTIFF WAS FOUND NOT GUILTY AFTER SHOWING THE COURT PHOTOS OF WHERE THE CARS WERE
117  PARKED THAT SATURDAY IN JULY 2019. THE PHOTOS CLEARLY SHOWED PLAINTIFF WAS NEARLY A HUNDRED
118  YARDS OFF DERSCH ROAD. AND AIRPORT ROAD. MOLLY TESTIFIED AT TRIAL THAT PLAINTIFF WAS 30 FEET
119  OFF DERSCH ROAD.
120
121  AT THE TRIAL IN JANUARY 2020 WITH DEFENDANT KACALEK, PLAINTIFF WAS FOUND NOT GUILTY OF
122  VIOLATION OF VC; 4000(a) SUSPENDED REGISTRATION. PLAINTIFF SHOWED THE COURT WHERE HE HAD
123  PAID FOR ONE YEAR'S REGISTRATION AT THE TIME OF PURCHASE, OCTOBER 23, 2018. PLAINTIFF ALSO
124  SHOWED THE COURT WHERE HIS VEHICLE INSURANCE WAS VALID AND ENFORCE THE FULL TIME SINCE
125  PURCHASE.
126
127  AT THIS SAME TRIAL THE COURT COMMISSIONER ORDERED THE CLERK TO SEARCH THE CALIFORNIA DMV
128  RECORDS OF PLAINTIFF'S F-150 TRUCK. AFTER A FIVE OR TEN MINUTE SEARCH OF COMPUTER RECORDS
129  THE CLERK COULD NOT FIND ANY RECORD OF PLAINTIFF'S VEHICLE REGISTRATION BEING SUSPENDED FOR
130  ANY REASON. THE COURT COMMISSIONER WAS BIAS TOWARD THE DEFENDANT IN THIS MATTER. WHEN
131  THE COURT CLERK COULD FIND NO RECORD OF DEFENDANT'S VEHICLE BEING SUSPENDED, WE ALL KNEW
132  THE DEPUTY KACALEK WAS GIVING FALSE TESTIMONY IN THIS COURT PROCEEDING. THE COMMISSIONER
133  DID NOTHING.
134
135  IN THE CA. DMV HISTORY DOCUMENT GIVEN TO PLAINTIFF IN MAY 2021, THERE WAS NO RECORD OF HIS
136  FORD F-150 TRUCK EVER BEING SUSPENDED FOR ANY REASON.
137
138  KACALEK COMMITED PERJURY AT TRIAL WHEN HE STATED PLAINTIFF'S VEHICLE REGISTRATION HAD BEEN
139  SUSPENDED WHEN IN FACT HE KNEW THAT WAS FALSE STATEMENT. KACALEK ALSO STATED HE LEFT THE
140  PAPERWORK ON PLAINTIFF'S TRUCK REGISTRATION BEING SUSPENDED, AT HIS DESK AT THE SHERIFF'S
141  OFFICE. NO SUCH DOCUMENT EXISTED. KACALEK COMMITTED PERJURY WHEN HE TESTIFIED AT TRIAL
142  THAT THE DISPATCH RADIOED HIM STATING THE PLAINTIFF'S FORD F-150 TRUCK REGISTRATION HAD BEEN
143  SUSPENDED. KACALEK COMMITTED PERJURY A THIRD TIME WHEN HE TESTIFIED THAT HE HAD A
144  CONVERSATION WITH DISPATCH ABOUT THE REGISTRATION BEING SUSPENDED. DISPATCH DID NOT RADIO
145  KACALEK AND STATE THAT PLAINTIFF'S VEHICLE WAS SUSPENDED.
146
147  THESE FALSE STATEMENTS WERE TOWARD A MATERIAL MATTER BEFORE THE COURT AND MEANT TO CAUSE
148  HARM AND INJURY TOWARD THE DEFENDANT. MR. KACALEK DID PERJURE HIMSELF WHEN HE MADE THESE
149  THREE STATEMENT AT TRIAL, UNDER OATH. DEFENDANTS KACALEK AND ROBERTS DID, ON TWO SEPARATE
150  WEEKENDS, CO-CONSPIRED TO DO UNLAWFUL ACTS TOWARD PLAINTIFF WHICH CAUSED INJURY AND
151  HARM TOWARD PLAINTIFF.
152

153 PLAINTIFF DID FILE A NOTICE WITH SHASTA COUNTY OFFICIALS WITHIN THE ALLOWABLE TIME FRAME
154 THAT HE WOULD FILE A COMPLAINT AGAINST THESE UNLAWFUL ACTIONS OF KACALEK AND ROBERTS.
155 PLAINTIFF DID SPEAK WITH DEFENDANT TOM BOSENKO OUTSIDE THE COUNTY SUPERVISOR CHAMBERS,
156 EXPLAINING TO HIM OF THE ILLEGAL ACTIONS OF KACALEK AND ROBERTS. MR. BOSENKO DID NOTHING.
157 PLAINTIFF DID WRITE TO JAMES JOHNSON, SHASTA COUNTY RISK3 MANAGEMENT ANALYST III AND JAMES
158 ROSS, SHASTA ASSISTANT COUNTY COUNSEL, ON JUNE 18, 2020 & FEBRUARY, 12, 2021, STATING THE
159 ILLEGAL ACTIONS OF KACALEK AND ROBERTS. THEY DID NOTHING AND DID NOT REPLY TO PLAINTIFF.
160
161 DEFENDANTS KACALEK AND ROBERTS HAD NO PROBABLE CAUSE TO STOP PLAINTIFF ON EACH SATURDAY OF
162 JULY 13TH AND 20TH, 2019.
163                                         COUNT ONE
164 DEFENDANTS KACALEK AND ROBERTS DID CAUSE INJURY AND HARM TOWARD PLAINTIFF ON JULY 6TH,
165 13TH AND 20TH, 2019, BY STOPPING HIM ON A PUBLIC RIGHT OF WAY, AND DEPRIVING PLAINTIFF OF
166 LIBERTY AND PROPERTY WITHOUT DUE PROCESS OF LAW IN VIOLATION OF PLAINTIFF'S FIFTH AMENDMENT
167 RIGHTS.
168
169 DEFENDANTS DID DENY PLAINTIFF THE ABILITY TO MOVE FREELY WITHIN THE COMMUNITY AND CITING
170 HIM FOR FRIVOLOUS VIOLATIONS, CA PC 597.4, DRIVING WITH SUSPENDED REGISTRATION, CA VC 4000,
171 WHEN IN FACT NONE EXISTED AND THESE DEFENDANTS KNEW THAT NONE EXISTED. THIS ILLEGAL ACTION
172 DID CAUSE INJURY AND HARM TOWARD PLAINTIFF, TO HIS CHARACTER AND INTENTIONAL INFLICTION OF
173 EMOTIONAL DISTRESS.
174
175                                         COUNT TWO
176 ALL DEFENDANTS BY THE ACTIONS OF KACALEK AND ROBERTS DID VIOLATE 18 U.S. Code § 241-
177 CONSPIRACY AGAINST RIGHTS OF PLAINTIFF, IE, PLAINTIFF WAS DENIED THE FREE EXERCISE OR
178 ENJOYMENT OF ANY RIGHT OR PRIVILEGE SECURED BY THE CONSTITUTION OR THE LAWS OF THE UNITED
179 STATES. WHEN KACALEK AND ROBERTS DID CO-CONSPIRE TO CHARGE PLAINTIFF WITH FALSE CITATIONS,
180 WHEN IN FACT THESE DEFENDANTS KNEW THAT PLAINTIFF DID NOT COMMIT ANY VIOLATIONS. BY DOING
181 SO THESE DEFENDANTS DID CAUSE INJURY AND HARM TOWARD PLAINTIFF AND TO HIS CHARACTER.
182
183                                        COUNT THREE
184 ALL DEFENDANTS BY THE ACTIONS OF KACALEK AND ROBERTS DID VIOLATE 18 U.S. Code § 242 THE
185 DEPRIVATION OF ANY RIGHTS, PRIVILEGES, OR IMMUNITIES SECURED OR PROTECTED BY THE
186 CONSTITUTION OR LAWS OF THE UNITED STATES. DEFENDANTS KACALEK AND ROBERTS DID DEPRIVE
187 PLAINTIFF OF HIS LAWFUL RIGHTS TO MOVE PEACEFULLY THRU THE COMMUNITY IN HIS VEHICLE WHICH
188 HAD A LAWFUL REGISTRATION, AND TO SIT ON PRIVATE LAND AND BUY, SELL, SWAP OR TRADE CHICKENS.

189 DEFENDANTS KACALEK AND ROBERTS UNDER COLOR OF AUTHORITY, DID VIOLATE PLAINTIFF'S 14TH
190 AMENDMENT RIGHTS BY FALSELY CITING HIM WITH VIOLATION OF CA. PC 597.4 AND WITH WITH
191 VIOLATION OF CA. VC; 4000(a) SUSPENDED REGISTRATION. KACALEK AND ROBERTS KNEW THIS TO BE
192 FALSE AS PLAINTIFF WAS FAR FROM PUBLIC LAND FROM WHICH ROBERTS CITED PLAINTIFF FOR VIOLATION
193 OF CA. PC 597.4. KACALEK KNEW THE PLAINTIFF'S VEHICLE REGISTRATION WAS NOT SUSPENDED. THIS
194 WRONGFUL ACTS BY DEFENDANTS DID CAUSE HARM, INJURY, INTENTIONAL INFLICTION OF EMOTIONAL
195 DISTRESS AND INJURY TO PLAINTIFF'S CHARACTER.
196
197                                        COUNT FOUR
198 DEFENDANTS KACALEK AND ROBERTS THRU THEIR EMPLOYER SHASTA COUNTY AND THE SHERIFF BOSENKO,
199 DID VIOLATE PLAINTIFF'S FOURTH AMENDMENT RIGHT OF UNREASONABLE SEARCH AND SEIZURE BY
200 ENTERING PLAINTIFF'S VEHICLE'S GLOVE BOX AND CONSOLE CONTAINER AND THE TAKING OF PLAINTIFF'S
201 PERSONAL PAPERS AND THINGS INCLUDING HIS BABY CHICKS. DEFENDANTS HAD NO WARRANT, NO
202 PROBABLY CAUSE TO COMPLETE THIS UNLAWFUL ACTION. THIS ACTION OF DEFENDANTS DID CAUSE
203 INJURY, HARM, EMOTIONAL DISTRESS AND DAMAGE TO PLAINTIFF'S CHARACTER.
204
205

206                                          COUNT FIVE
207    DEFENDANTS KACALEK AND ROBERTS THRU THEIR EMPLOYER SHASTA COUNTY AND THE SHERIFF BOSENKO,
208    DID VIOLATE PLAINTIFF'S FOURTH AMENDMENT RIGHT OF UNREASONABLE SEARCH AND SEIZURE BY
209    ENTERING PLAINTIFF'S VEHICLE AND THE TAKING OF PLAINTIFF'S BABY CHICKS. DEFENDANTS HAD NO
210    WARRANT, NO PROBABLY CAUSE TO COMPLETE THIS UNLAWFUL ACTION. THIS ACTION OF DEFENDANTS
211    DID CAUSE INJURY, HARM, EMOTIONAL DISTRESS AND DAMAGE TO PLAINTIFF'S CHARACTER.
212
213                                           COUNT SIX
214    DEFENDANTS KACALEK AND ROBERTS, DID THROUGH THEIR EMPLOYER DEFENDANTS SHERIFF BOSENKO
215    AND SHASTA COUNTY SHERIFF'S OFFICE, UNDER COLOR OF LAW, VIOLATED PLAINTIFF'S 14TH AMENDMENT
216    RIGHTS BY DENYING PLAINTIFF DUE PROCESS OF LAW. KACALEK DID ARREST AND DETAIN PLAINTIFF FOR A
217    SUSPENDED REGISTRATION OF HIS VEHICLE. KACALEK DID KNOW THAT THIS SUSPENSION WAS
218    FRIVOLOUSLY INITIATED BY HIMSELF AND DEFENDANT ROBERTS. THIS ACTION DID CAUSE PLAINTIFF
219    INJURY, HARM AND INFLICTION OF EMOTIONAL DISTRESS, PLUS DAMAGE TO PLAINTIFF'S CHARACTER.
220
221                                         COUNT SEVEN
222    DEFENDANTS KACALEK AND  ROBERTS UNDER COLOR OF LAW, DID DENY PLAINTIFF DUE PROCESS OF LAW.
223    THE RIGHT OF THE PEOPLE TO BE SECURE IN THEIR PERSONS, HOUSES, PAPERS, AND EFFECTS, AGAINST
224    UNREASONABLE SEARCHES AND SEIZURES, SHALL NOT BE VIOLATED. THESE DEFENDANTS DID VIOLATE
225    PLAINTIFF'S FOURTH AMENDMENT RIGHT  WHEN THEY STOPPED PLAINTIFF UPON A PUBLIC RIGHT OF WAY,
226    ARRESTED PLAINTIFF AND CONFISCATED PLAINTIFF'S PROPERTY, HIS FORD F-150 TRUCK ALONG WITH HIS
227    BABY-CHICKS FROM THE ENCLOSED COMPARTMENT OF HIS FORD F-150 TRUCK. THESE SAME DEFENDANTS
228    DID ENTER AND SEARCH PLAINTIFF'S TRUCK, WITHOUT A WARRANT OR PROBABLE CAUSE. THIS ACTION BY
229    DEFENDANTS DID CAUSE PLAINTIFF INJURY, HARM, EMOTIONAL DISTRESS AND DAMAGE TO HIS
230    CHARACTER.
231                                         COUNT EIGHT
232    DEFENDANT KACALEK ACTING UNDER COLOR OF AUTHORITY FOR THE COUNTY OF SHASTA, AND UNDER
233    AUTHORITY OF DEFENDANT BOSENKO AND UNLAWFULLY DID COMMIT ASSAULT AGAINST PLAINTIFF WHEN
234    HE ORDERED HIM OUT OF TRUCK AND PLACED HANDCUFFS ON PLAINTIFF. KACALEK HAD NO LEGAL
235    AUTHORITY OR PROBABLE CAUSE TO STOP PLAINTIFF'S VEHICLE. PLAINTIFF WAS CLEARLY PLACED IN
236    APPREHENSION OF A BATTERY. THIS UNLAWFUL ACT DID CAUSE INJURY, HARM, EMOTIONAL DISTRESS,
237    FINANCIAL DISTRESS TOWARD PLAINTIFF AND TO HIS CHARACTER.
238
239                                          COUNT NINE
240    DEFENDANT KACALEK ACTING UNDER COLOR OF AUTHORITY FOR THE COUNTY OF SHASTA, UNDER
241    AUTHORITY OF DEFENDANT BOSENKO AND UNLAWFULLY DID COMMIT BATTERY  AGAINST PLAINTIFF WHEN
242    HE ORDERED HIM OUT OF TRUCK AND GRABBED PLAINTIFF BY THE ARM AND PLACED HANDCUFFS ON
243    PLAINTIFF. KACALEK HAD NO LEGAL AUTHORITY OR PROBABLE CAUSE TO STOP PLAINTIFF'S VEHICLE.  THIS
244    UNLAWFUL ACT DID CAUSE INJURY, HARM, EMOTIONAL DISTRESS, FINANCIAL DISTRESS TOWARD PLAINTIFF
245    AND TO HIS CHARACTER.
246                                           COUNT TEN
247    DEFENDANT ROBERTS DID COMMIT PERJURY WHEN SHE STATED IN COURT THAT PLAINTIFF WAS 30 FEET
248    FROM THE ROADWAY.  ROBERTS GAVE THIS FALSE TESTIMONY, WHICH SHE KNEW TO BE FALSE, TO HELP
249    HER GAIN A GUILTY VERDICT AGAINST PLAINTIFF. IT DID NOT WORK. AT THE TIME ROBERTS DID NOT
250    KNOW PLAINTIFF HAD PHOTOS OF THE GROUP AND THEIR VEHICLES ON THIS PRIVATE 4 ACRES OF FLAT
251    GRASSLAND. PHOTOS INTRODUCED AT TRIAL STATED THAT DEFENDANT WAS NEARLY 300 FEET FROM
252    DERSCH ROAD AND 300 FEET FROM AIRPORT.  THIS UNLAWFUL ACT DID CAUSE INJURY, HARM, EMOTIONAL
253    DISTRESS, FINANCIAL DISTRESS TOWARD PLAINTIFF AND TO HIS CHARACTER.
254
255                                         COUNT ELEVEN
256    DEFENDANT KACALEK DID COMMIT PERJURY MULTIPLE TIMES DURING THE PLAINTIFF'S TRIAL IN LATE
257    JANUARY OF 2020. KACALEK DID TESTIFY THAT HE LEFT THE PAPERWORK ON HIS DESK CONCERNING
258    PLAINTIFF'S VEHICLE REGISTRATION SUSPENSION. THIS WAS FALSE AND KACALEK KNEW IT WAS FALSE.  IT

259  WAS A MATERIAL FACT OF THE TRIAL. THERE WAS NO PAPERWORK ON HIS DESK OR ANYWHERE, STATING
260  PLAINTIFF'S VEHICLE REGISTRATION WAS SUSPENDED.
261
262  KACALEK DID TESTIFY THAT DISPATCH RADIOED HIM STATING THE PLAINTIFF'S REGISTRATION WAS
263  SUSPENDED. THIS WAS FALSE AND KACALEK KNEW IT WAS FALSE. DISPATCH DID NOT RADIO KACALEK
264  SPEAKING OF PLAINTIFF'S REGISTRATION. KACALEK FABRICATED THE STORY.
265
266  KACALEK DID TESTIFY THAT DISPATCH RADIOED HIM STATING PLAINTIFF'S REGISTRATION WAS
267  SUSPENDED. THIS WAS ALSO FABRICATED BY KACALEK. DISPATCH NEVER TOLD KACALEK THAT PLAINTIFF'S
268  REGISTRATION WAS SUSPENDED. THERE IS NO RECORD WITH CALIFORNIA DMV SHOWING PLAINTIFF'S
269  VEHICLE WAS SUSPENDED. IN FACT THE RECORD SHOWED JUST THE OPPOSITE. THE RECORD SHOWED
270  THAT PLAINTIFF'S VEHICLE REGISTRATION WAS PAID FROM OCTOBER 23, 2018 TO OCTOBER 22, 2019, WITH
271  INSURANCE COVERAGE FOR THE ENTIRE YEAR.
272
273  KACALEK DID WRITE IN HIS POLICE REPORT OF THE INCIDENT THAT DISPATCH RADIOED HIM TELLING HIM
274  THE PLAINTIFF'S REGISTRATION WAS SUSPENDED WHEN IT FACT THIS DID NOT HAPPEN.
275
276  IF THE PROSECUTOR (IN THIS TRIAL, THE COMMISSIONER WAS THE PROSECUTOR AND JUDGE) KNEW OR
277  SHOULD HAVE KNOWN THAT TESTIMONY GIVEN TO THE TRIAL WAS PERJURED, THE CONVICTION MUST BE
278  SET ASIDE IF THERE IS ANY REASONABLE LIKELIHOOD THAT THE FALSE TESTIMONY COULD HAVE AFFECTED
279  THE JUDGMENT OF THE (COMMISSIONER) JURY. THE COMMISSIONER REQUESTED THE COURT CLERK TO
280  SEARCH THE CALIFORNIA DMV WEB SITE FOR PLAINTIFF'S RECORD ON HIS FORD F-150 TRUCK. THE CLERK
281  RESPONDED THAT SHE COULD FIND NO EVIDENCE OF PLAINTIFF'S VEHICLE EVER BEING SUSPENDED. THIS
282  SHOULD HAVE TOLD THE COMMISSIONER THAT DEFENDANT KACALEK WAS MAKING FALSE STATEMENT IN
283  THE COURTROOM. THE COMMISSIONER DID NOTHING.
284
285  KACALEK TESTIFIED AT TRIAL THAT HIS PROBABLE CAUSE FOR STOPPING PLAINTIFF WAS SUSPENDED
286  REGISTRATION. THIS WAS FALSE. PLAINTIFF HAD A VALID REGISTRATION AT THE TIME KACALEK STOPPED
287  PLAINTIFF. KACALEK FABRICATED THESE FOUR STORIES, PERJURING HIMSELF AT TRIAL AND CAUSING THIS
288  LITIGATION.
289
290  THIS UNLAWFUL ACT DID CAUSE INJURY, HARM, INTENTIONALLY INFLICTED EMOTIONAL DISTRESS,
291  FINANCIAL DISTRESS TOWARD PLAINTIFF AND TO HIS CHARACTER.
292
293                                    COUNT TWELVE
294  A JURY CAN AWARD PUNITIVE DAMAGES IN A FALSE ARREST OR IMPRISONMENT CASE, IF THE REQUISITE
295  LEVEL OF MALICE OR OTHER REQUISITE MENTAL STATE IS ESTABLISHED.
296
297  DEFENDANTS ROBERTS AND KACALEK DID HAVE MALICE WHEN THEY CITED AND FALSELY ARRESTED THE
298  PLAINTIFF ON JULY 20, 2019. THE PROBABLE CAUSE WAS THE ALLEGED SUSPENSION OF THE PLAINTIFF'S
299  REGISTRATION. THE PLAINTIFF'S REGISTRATION WAS NOT SUSPENDED FROM OCTOBER 23, 2018 TO
300  OCTOBER 22, 2019.
301
302  DEFENDANT KACALEK DID COMMIT FALSE ARREST AGAINST PLAINTIFF WHEN HE UNLAWFULLY PLACED
303  HANDCUFFS ON PLAINTIFF AND PLACED HIM IN THE REAR SEAT OF HIS PATROL VEHICLE, AND HELD
304  PLAINTIFF FOR OVER AN HOUR AGAINST HIS WILL. KACALEK DID CO-CONSPIRE WITH DEFENDANT
305  ROBERTS TO FALSELY ARREST PLAINTIFF.
306
307  THIS UNLAWFUL ACT DID CAUSE INJURY, HARM, INTENTIONALLY INFLICTED EMOTIONAL DISTRESS AND
308  DAMAGE TOWARD PLAINTIFF AND TO HIS CHARACTER. PLAINTIFF ALSO SEEKS PUNITIVE DAMAGES!
309
310                                   COUNT THIRTEEN
311  DEFENDANT KACALEK DID FALSELY COMMIT FALSE ARREST WHEN HE PLACED HANDCUFFS ON THE

6

312  PLAINTIFF AND THEN PLACED HIM INSIDE THE REAR COMPARTMENT OF HIS PATROL VEHICLE. THIS ILLEGAL
313  ACTION BY KACALEK DID VIOLATE THE CIVIL RIGHT OF PLAINTIFF TO BE FREE AND FROM RESTRAINT OF
314  MOVEMENT. KACALEK HAD NO PROBABLE CAUSE OR REASONABLE BASIS TO ARREST PLAINTIFF WHICH IS
315  REQUIRED FOR THIS ACTION.
316
317  THIS UNLAWFUL ACT DID CAUSE INJURY, HARM, INTENTIONALLY INFLICTED EMOTIONAL DISTRESS,
318  FINANCIAL DISTRESS AND DAMAGE TOWARD PLAINTIFF AND TO HIS CHARACTER. PLAINTIFF ALSO SEEKS
319  PUNITIVE DAMAGES!
320                                    COUNT FOURTEEN
321  DEFENDANT KACALEK AND ROBERTS DID COMMIT FRAUD WHEN HE TOLD PLAINTIFF THAT HIS VEHICLE
322  REGISTRATION WAS SUSPENDED. KACALEK KNEW THIS TO BE FALSE AND ALONG WITH ROBERTS
323  DEVELOPED THIS STORY TO FALSELY ARREST PLAINTIFF, TOW HIS VEHICLE AND CONFISCATE HIS
324  POSSESSIONS. THESE ACTIONS OF KACALEK AND ROBERTS DID CAUSE FINANCIAL HARM TOWARD
325  PLAINTIFF ALONG WITH PHYSICAL HARM, INJURY AND INTENTIONALLY INFLICTED EMOTIONAL DISTRESS
326  AGAINST PLAINTIFF.
327                                    COUNT FIFTEEN
328  DEFENDANT ROBERTS DID CITE PLAINTIFF WITH A WARNING ON JULY 7, 2019 AND WITH A MISDEMEANOR
329  CITATION ON JULY 13, 2019 OF VIOLATION OF CA. PC 597.4. DEFENDANT ROBERTS KNEW HER ACTIONS
330  WERE ILLEGAL AND WRONG AS PLAINTIFF WAS ALWAYS ON PRIVATE LAND, NOT PUBLIC LAND. ROBERTS
331  AND HER SUPERVISORS AT THE SHERIFF'S OFFICE HAD A WEEK TO REVIEW THE LEGALITY OF HER ACTIONS
332  AFTER ISSUING THE WARNING. AT TRIAL IT WAS SHOWN THAT PLAINTIFF WAS ALWAYS ON PRIVATE LAND,
333  NOT PUBLIC LAND. PLAINTIFF WAS FOUND NOT GUILTY.
334
335  ROBERTS ACTIONS DID CAUSE INJURY, HARM, INTENTIONALLY INFLICTED EMOTIONAL DISTRESS, FINANCIAL
336  DISTRESS AGAINST PLAINTIFF AND DID CAUSE INJURY TO HIS CHARACTER.
337
338                                    COUNT SIXTEEN
339  DEFENDANT KACALEK DID COMMIT DECEIT BY CLAIMING AND TELLING PLAINTIFF THAT HIS VEHICLE
340  REGISTRATION WAS SUSPENDED. UNDER CA CC 1709/1710 THIS ACT IS ILLEGAL. PLAINTIFF RELIED ON
341  KACALEK CLAIM AND DID NOT RESIST KACALEK UNLAWFUL ACTIONS. KACALEK DID KNOW THAT HIS
342  ACTIONS WERE WRONG AND UNLAWFUL.

343  THIS UNLAWFUL ACTION OF KACALEK DID CAUSE INJURY, HARM, INTENTIONALLY INFLICTED EMOTIONAL
344  DISTRESS, FINANCIAL DISTRESS AGAINST PLAINTIFF AND DID CAUSE INJURY TO HIS CHARACTER.

345                                    COUNT SEVENTEEN
346  DEFENDANTS ROBERTS AND KACALEK DID COMMIT MALICIOUS PROSECUTION TOWARD PLAINTIFF WHEN
347  THEY CITED PLAINTIFF WITH A WARNING AND A WEEK LATER WITH A CITATION OF CA PC 597.4 BY
348  ROBERTS. KACALEK DID CITE PLAINTIFF WITH VIOLATION OF CA VC 4000 DRIVING ON A SUSPENDED
349  VEHICLE REGISTRATION.
350  BOTH DEFENDANTS DID KNOW THESE ACCUSATIONS WERE FALSE AND DID SO WITH MALICE TOWARD
351  PLAINTIFF.

352  THESE ACTIONS BY DEFENDANTS ROBERTS AND KACALEK DID CAUSE INJURY, HARM, INTENTIONALLY
353  INFLICTED EMOTIONAL DISTRESS, FINANCIAL DISTRESS AGAINST PLAINTIFF AND DID CAUSE INJURY TO HIS
354  CHARACTER.
355                                    COUNT EIGHTEEN
356  DEFENDANT SHERIFF ERIC MAGRINI DID VIOLATE 34 U.S. CODE 12601 BY CONTINUOUSLY REFUSING TO
357  INVESTIGATE THE MANY CLAIMS/COMPLAINTS MADE BY PLAINTIFF AGAINST DEPUTY RYAN KACALEK AND
358  ANIMAL CONTROL PERSON MOLLY ROBERTS.
359  THESE ACTIONS OR NON-ACTIONS BY DEFENDANT MAGRINI DID CAUSE INJURY, HARM, INTENTIONALLY
360  INFLICTED EMOTIONAL DISTRESS, FINANCIAL DISTRESS AGAINST PLAINTIFF AND DID CAUSE INJURY TO HIS
361  CHARACTER.
362                                    COUNT NINETEEN

363 DEFENDANT MOLLY ROBERTS AND RYAN KACALEK DID DO AN ILLEGAL CONVERSION WHEN THEY REMOVED
364 PLAINTIFF'S BABY CHICKS FROM PLAINTIFF'S POSSESSION WITHOUT PLAINTIFF'S CONSENT, WITHOUT
365 PROBABLE CAUSE AND WITHOUT A WARRANT.

366 THE DEFENDANT'S ACTIONS DID CAUSE INJURY, HARM, INTENTIONALLY INFLICTED EMOTIONAL DISTRESS,
367 FINANCIAL DISTRESS AGAINST PLAINTIFF AND DID CAUSE INJURY TO THIS CHARACTER.

368                                          COUNT TWENTY
369 DEFENDANT KACALEK DID FILE A FALSE POLICE REPORT STATING DISPATCH RADIOED HIM STATING THE
370 PLAINTIFF'S VEHICLE HAD A SUSPENDED REGISTRATION. THIS WAS FALSE AND KACALEK KNEW IT WAS
371 FALSE. KACALEK AND ROBERTS DID FABRICATE THE STORY TO CAUSE HARM AND INJURY TOWARD
372 PLAINTIFF.
373
374 THE COMMISSIONER AT TRIAL KNEW OR SHOULD HAVE KNOW KACALEK WAS FABRICATING THE CLAIM OF
375 SUSPENDED REGISTRATION WHEN THE COURT CLERK COULD NOT FIND ANY DMV RECORD OF PLAINTIFF'S
376 VEHICLE REGISTRATION BEING SUSPENDED.

377 THESE ACTIONS BY DEFENDANTS ROBERTS AND KACALEK DID CAUSE INJURY, HARM, INTENTIONALLY
378 INFLICTED EMOTIONAL DISTRESS, FINANCIAL DISTRESS AGAINST PLAINTIFF AND DID CAUSE INJURY TO HIS
379 CHARACTER.

380                                             DAMAGES
381 PLAINTIFF SEEKS THE TERMINATION OF EMPLOYMENT FROM SHASTA COUNTY OF RYAN KACALEK AND MOLLY
382 ROBERTS AND THE TERMINATION OF ANY POSSIBLE RETIREMENT BENEFITS THEY MAY HAVE COMING.
383 CORRUPT COUNTY OFFICIALS SHOULD NOT BENEFIT FROM THEIR ILLEGAL ACTS.
384
385 PLAINTIFF SEEKS LEGAL FEES, DAMAGES FOR PAIN AND SUFFERING, EMOTIONAL DISTRESS, FINANCIAL
386 DISTRESS, LOSS OF ENJOYMENT OF LIFE, MEDICAL EXPENSES FOR FRACTURED WRIST, LOSS OF EARNINGS
387 AND EARNING CAPACITY, DESTRUCTION OF PERSONAL PROPERTY. PLAINTIFF SEEKS CONSEQUENTIAL
388 DAMAGES THAT AROSE FROM THE DEFENDANT'S WRONGFUL ACTS.
389
390 FROM THE EVIDENCE AT TRIAL, PLAINTIFF SEEKS COMPENSATORY DAMAGES, INCIDENTAL DAMAGES,
391 CONSEQUENTIAL DAMAGES, NOMINAL DAMAGES, AND STATUTORY DAMAGES.
392
393 PLAINTIFF SEEKS DAMAGES, DESCRIBED ABOVE, IN AN AMOUNT TO BE DETERMINED AT TRIAL.
394
395 PLAINTIFF REQUEST PUNITIVE DAMAGES WHEN ALLOWED.
396
397 PLAINTIFF REQUEST A TRIAL BY JURY.
398
399
400 JIMMY GETTINGS, PLAINTIFF, PRO PER
401
402 _____
403
404