UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY GETTINGS, | No. 2:21-cv-01139-DJC-SCR |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SHASTA, et al., | |
| Defendants. | |

Plaintiff Jimmy Gettings brought the present action under 18 U.S.C. § 1983, alleging violations of his constitutional rights in connection with several encounters with Defendants Ryan Kacalek and Molly Roberts in July 2019.  These encounters stem from Plaintiff's alleged sale of baby chickens from his vehicle and ultimately culminated with Plaintiff being cited for a violation of California Penal Code section 597.4 and later arrested for violations of Vehicle Code sections 4000 and 12500.

Presently before the Court is Defendants' Motion for Summary Judgment. (Mot. (ECF No. 72).)  Also before the Court is Defendants' concurrently filed Motion to Exclude Opinions and Testimony of Plaintiff's Expert Debra Erikson.  (ECF No. 71.)  For the reasons stated below, Defendants' Motion for Summary Judgment is granted in part and denied in part.  Defendants' Motion to Exclude Plaintiff's Expert is denied as moot.

1

**BACKGROUND**

On July 6, 2019, Defendant Molly Roberts, an Animal Regulation Officer for the Shasta County Sheriff's Office, responded to a report that an individual was selling live animals in a lot.  (Defendants' Statement of Undisputed Facts ("DSUF") (ECF No. 77-1)[1] ¶¶ 2–3.)  Defendant Roberts encountered Plaintiff Jimmy Gettings at a lot owned by the City of Redding, where Plaintiff was selling baby chickens.  (*Id.* ¶¶ 4–7.)  Defendant Roberts advised Plaintiff that he was violating Penal Code section 597.4 by selling baby chickens in that location, and if he continued to do so, he would receive a citation.[2]  (*Id.* ¶¶ 7–8.)  After the encounter, Plaintiff left the area.  (*Id.* ¶ 9.)

On July 13, 2019, Defendant Roberts observed Plaintiff at a location near Dersch Road with baby chickens and a sign that read "Baby Chickens for Sale."  (*Id.* ¶ 11.)  Defendant Roberts requested assistance from Defendant Ryan Kacalek, a Deputy in the Shasta County Sheriff's Office, and told him she had observed Plaintiff violating Penal Code section 597.4.  (*Id.* ¶ 12.)  While responding to the request, Defendant Kacalek saw Plaintiff driving away from the location Defendant Roberts had reportedly observed him.  (*Id.* ¶ 13.)  Defendant Kacalek stopped Plaintiff's vehicle and asked for identification.  (*Id.* ¶¶ 14, 16.)  Plaintiff provided a California identification card and a valid Illinois driver's license.  (*Id.* ¶ 16.)  Defendant Roberts, who arrived after the initial stop began, issued Plaintiff a citation for violation of Penal Code section 597.4.  (*Id.* ¶ 17.)

---

[1] Citations to the DSUF are to the version containing Plaintiff's responses.  Unless otherwise indicated, such citations are only to facts where Defendant has not raised a genuine dispute.  The Court notes that Plaintiff did not file his own statement of undisputed facts, instead only responding to Defendants'.  Thus, all citations are to the DSUF.  Additionally, Defendants filed a "response" to Plaintiff's response to the DSUF.  (*See* ECF No. 79-2.)  Many of these responses constitute improper legal argument beyond the briefing and will not be considered.  Where Plaintiff has identified "additional facts" in his response, Defendants' response will be considered as a response to Plaintiff's assertion that these additional facts are undisputed.

[2] Plaintiff does not dispute that Defendant Roberts told Plaintiff he was violating section 597.4, though whether Plaintiff was actually violating Penal Code section 597.4 is clearly in dispute.

On July 20, 2019, Defendant Kacalek observed Plaintiff at a different location near Dersch Road with baby chickens and signage in his vehicle, though Defendant Kacalek was unable to read the signs in Plaintiff's vehicle.  (*Id.* ¶ 24.)  Defendant Kacalek initiated a traffic stop of Plaintiff's vehicle.[3]  (*Id.* ¶ 25.)  Upon request, Plaintiff again provided a California identification card and an Illinois driver's license.  (*Id.* ¶ 29.)  Defendant Kacalek arrested Plaintiff, placed him in handcuffs, and put him in the back of Defendant Kacalek's patrol vehicle.  (*Id.* ¶¶ 32–34.)  Defendant Kacalek then searched Plaintiff's vehicle.  (*Id.* ¶ 35.)  Defendant Kacalek also requested an Animal Regulation Officer to retrieve the live chickens from Plaintiff's vehicle.  (*Id.* ¶ 38.)  Defendant Roberts responded and seized 36 baby chickens from the vehicle.  (*Id.* ¶¶ 38–39.)  Defendant Kacalek cited Plaintiff with a violation of Vehicle Code section 4000, driving without a valid registration, and Vehicle Code section 12500, driving without a valid California license.  (*Id.* ¶ 42.)

Plaintiff was later found not guilty of the July 13, 2019 citation for violation of Penal Code section 597.4 issued by Defendant Roberts.  (*Id.* ¶ 22.)  Plaintiff was separately found not guilty of violating Vehicle Code section 4000, but guilty of violating Vehicle Code section 12500.  (*Id.* ¶ 47.)  Plaintiff was able to retake possession of his vehicle and chickens on July 22, 2019.  (*Id.* ¶¶ 40, 43.)

Defendants' Motion for Summary Judgment is fully briefed.  (Mot.; Opp'n (ECF No. 77); Reply (ECF No. 79).)  On November 6, 2025, the Court held oral argument, at the conclusion of which it took this matter under submission.  (ECF No. 80.)

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "a reasonable jury could return a verdict for the

---

[3] Defendants assert this stop was initiated on suspicion that Plaintiff was driving on a suspended registration after Defendant performed a records search.  (DSUF ¶ 25.)  This is disputed by Plaintiff, who asserts his vehicle was properly registered.

nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party to "establish that there is a genuine issue of material fact. . . . " *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986).  The parties must "(A) cit[e] to particular parts of materials in the record. . . or (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  When determining a motion for summary judgment, "the inferences to be drawn from the underlying facts. . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted).  Ultimately, for the moving party to succeed, the Court must conclude that no rational trier of fact could find for the opposing party.  *See id.*

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on the evidence's form, but its content.  *Block v. City of L.A.,* 253 F.3d 410, 418–19 (9th Cir. 2001) (citation omitted).  The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing party objects to the proposed evidence, the party seeking admission must direct the court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible. . . ." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 385–86 (9th Cir. 2010).  But if evidence falls short of the formalities of Rule 56, a district court still may exercise

its discretion "to be somewhat lenient." *Sch. Dist. No. 1J, Multnomah Cnty., Or. V. ACandS, Inc.,* 5 F.3d 1255, 1261 (9th Cir. 1993) (collecting cases).

**DISCUSSION**

**I.  Plaintiff's False Arrest Claims**

Plaintiff's First and Second Causes of Action assert claims under 42 U.S.C. § 1983 for "unreasonable seizure of a person" in connection with the July 13 and July 20 incidents, respectively.  As an initial matter, Defendants note that only Defendant Roberts was responsible for the July 13 citation and only Defendant Kacalek was responsible for the July 20 charges.  Plaintiff does not contest this.  Accordingly, Plaintiff's First Cause of Action concerning the July 13 incident is dismissed as to Defendant Kacalek, and Plaintiff's Second Cause of Action concerning the July 20 incident is dismissed as to Defendant Roberts.

**A.  Probable Cause**

Defendants contend that Plaintiff's First and Second Causes of Action must fail as Defendants had probable cause on both July 13 and July 20.  "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013).  However, "in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury, and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (internal citations omitted).

**1.  July 13 Incident**

There are genuine disputes of material fact as to whether Defendant Roberts had probable cause to believe Plaintiff had committed a violation of Penal Code section 597.4 or any other crime on July 13, 2019.  Section 597.4 makes it unlawful to "[s]ell or give away as part of a commercial transaction a live animal on any street, highway, public right-of-way, parking lot, carnival, or boardwalk[,]" as well as to

5

"display or offer for sale, or display or offer to give away as part of a commercial transaction, a live animal, if the act of selling or giving away the live animal" would occur in these same locations.  Cal. Pen. Code section 597.4(a)(1)–(2).  Plaintiff specifically disputes that he was in any location in which selling or offering for sale would be prohibited under section 597.4.  Plaintiff contends that at all times he was selling chicks "at least several dozen yards away from the road."  (Gettings Decl. (ECF No. 77-2) ¶ 11.)  Plaintiff also presents as additional evidence in the form of two photos allegedly taken on July 13, 2019, the day he received the citation for violation of section 597.4, which Plaintiff states "show[s] the area where I had been selling chicks."  (*Id.* ¶ 7; *see id.*, Ex. 7.)  These photos appear to show vehicles parked in a vacant lot away from the roadway.  (*See id.*)  Defendants assert that Defendant Roberts saw Plaintiff selling baby chickens on the side of the road in violation of section 597.4.  But Defendants' only evidence of this is Defendant Roberts testimony stating that she had observed Plaintiff on a public right-of-way, which is clearly disputed by Plaintiff's statements.[4]  (*See* DSUF ¶ 12 (citing Roberts Dep. (ECF No. 72-12) at 27:7–29:12).)  Defendants also object to Plaintiff's photos, arguing there is no indication of the time the photos were taken or where Plaintiff was located when Defendant Roberts allegedly observed Plaintiff.[5]  (*See* ECF No. 79-1 at 2.)

Presented with this conflicting evidence about material facts, summary judgment is clearly inappropriate.  Determinations as to the reliability of witnesses and the weight of their testimony are solely for the jury to decide.  *Bateman v. Donovan*, 131 F.2d 759, 763 (9th Cir. 1942) ("Where uncertainty arises from a conflict in the

---

[4] Defendants also cite testimony from Defendant Kacalek that Defendant Roberts had called him and told him that she had observed Plaintiff "on the side of the road selling chickens . . . ."  (*See* DSUF ¶ 12 (citing Kacalek Dep. (ECF No. 72-11) at 17:17–18:17).)  Ignoring that this likely constitutes inadmissible hearsay, the value of this testimony is minimal and only serves to bolster Defendant Roberts own statements.

[5] Defendants' evidentiary objections as to the photo appear to generally go more to weight than admissibility.  These issues are ripe for cross-examination.  This determination does not preclude Defendants from raising objections to the admission of these exhibits at trial should Plaintiff be unable to lay adequate foundation.

testimony, the question is not one of law but of fact to be settled by the jury." (cleaned up)).  As such, summary judgment on this basis as to Plaintiff's First Cause of Action is denied.

### 2. July 20 Incident

There are also genuine disputes of material fact as to whether Defendant Kacalek had probable cause to arrest Plaintiff for violations of Vehicle Code sections 4000 and 12500.  In relevant part, section 4000 states that "[a] person shall not drive, move, or leave standing upon a highway, or in an offstreet public parking facility, any motor vehicle, trailer, semitrailer, pole or pipe dolly, or logging dolly, unless it is registered and the appropriate fees have been paid under this code . . . ."  Cal. Veh. Code section 4000(a)(1).  On July 20, Defendant Kacalek arrested Plaintiff and charged him with a violation of this section on the grounds that Plaintiff's registration was suspended.  (DSUF ¶ 42.)  Plaintiff contends that at the time of his arrest, his vehicle registration was not suspended.  He cites documents purportedly obtained from the California Department of Motor Vehicles showing the registration history of his vehicle.  (Gettings Decl., Ex. 1.)  Defendants in turn claim that Defendant Kacalek had found that Plaintiff's registration was suspended after a records search, which was confirmed with a call to dispatch, though Plaintiff disputes the credibility of these claims.  (DSUF ¶ 25.)  Defendants also provide a "Vehicle Registration Report for License Plate 7474ON2 dated July 20, 2019" from an unknown system, which seems to show Plaintiff's vehicle registration as suspended.  (*See* ECF No. 72-5.)  Both parties raise questions as to the veracity and reliability of the documentary evidence the other presents, but these are questions that go to the weight of each party's evidence which are best resolved at trial.  This leaves the conflicting statements of Plaintiff and Defendant Kacalek, along with two sets of documents showing conflicting information. While Defendants may contend that the information they provided was all that was available to Defendant Kacalek, thus establishing probable cause at the time of the arrest, Defendants have not presented any evidence to support such an assertion.

Nor have they introduced evidence as to how to interpret the information contained in the Vehicle Registration Report on which Defendant Kacalek relied.  There are thus genuine disputes of material fact as to whether Defendant Kacalek had probable cause to believe Plaintiff had violated section 4000(a)(1).

Similarly, there are factual disputes as to whether Defendant Kacalek had probable cause to believe Plaintiff had violated section 12500.  Defendants concede that on both July 13 and July 20, Plaintiff presented Defendant Kacalek with a valid Illinois driver's license.  (DSUF ¶¶ 16, 29.)  Defendants contend that Plaintiff was properly cited with driving without a California driver's license on Defendant Kacalek's belief that Plaintiff had "established residency" in California, as Defendants Kacalek and Roberts had observed Plaintiff in California three weekends in a row.  (See DSUF ¶ 27.)[6]  Plaintiff contests that he never considered California his residence and was only in the state for "a specialist doctor's appointment."  (Gettings Decl. ¶ 12.)

Notably, during deposition, Defendant Kacalek stated that he had no knowledge of where Plaintiff resided prior to some time in September or October 2019, after Defendant Kacalek had cited Plaintiff with a violation of section 12500.  (Kacalek Dep. at 40:17–41:3.)  Defendant Kacalek later indicated the reasons he believed Petitioner resided in California – that Petitioner had live chickens, that the vehicle he was driving was registered in Sacramento, that his prior California license (which expired approximately three years prior to the July 2019 incidents), listed an address in California, and the fact that Plaintiff had been observed in California three weekends in a row.  But none of these facts appear to conclusively establish that Defendant Kacalek had probable cause to believe Plaintiff resided in California.

At oral argument, Defendants asserted that there was a "rebuttable presumption" under California Vehicle Code section 516 that Plaintiff was a resident of California.  But the rebuttable presumption in that section only provides that

---

[6] Defendant Kacalek's determination of Plaintiff's residency is disputed by Plaintiff.  (*See* DSUF ¶ 27 (Plaintiff's response).)

"[p]resence in the state for six months or more in any 12-month period gives rise to a rebuttable presumption of residency."  Thus, Defendant Kacalek had no reason to believe this rebuttable presumption applied based on the information available to him.  Section 516 also lists information that can be considered "evidence of residency" such as the address where an individual is registered to vote or the location of their employment. But the section is also clear that this is evidence "for purposes of vehicle registration[,]" not with regard to residency generally.  Cal. Veh. Code § 516.

Based on the information available to the Court, there are genuine issues of fact, and it is not readily apparent that no reasonable jury could find an absence of probable cause.  As such, summary judgment is not appropriate on the basis that Defendant Kacalek had probable cause that Plaintiff had violated section 12500. *Johnson v. Barr*, 79 F.4th 996, 1003 (9th Cir. 2023) ("Generally, the existence of probable cause is a question for the jury, though summary judgment is appropriate when there is no genuine issue of fact and if no reasonable jury could find an absence of probable cause under the facts." (internal citations and quotation marks removed)).

Defendants originally raised that issue preclusion also applied to prevent Plaintiff from re-adjudicating issues decided in prior proceedings.  (Mot. at 8-9.)  In Plaintiff's Opposition, Plaintiff argues that California does not impose issue preclusion on claims connected to convictions under the Vehicle Code.  (*See* Opp'n at 5 (citing Veh. Code § 40834 and *Lockett v. Ericson*, 656 F. 3d 892 (9th Cir. 2011)).)  Vehicle Code section 40834, which Plaintiff cites in his Opposition, states that a " judgment of conviction for any violation of this code or of any local ordinance relating to the operation of a motor vehicle or a finding reported under Section 1816 shall not be res judicata or constitute a collateral estoppel of any issue determined therein in any subsequent civil action."  Based on this argument, Defendants state that they now agree that issue preclusion does not apply to Plaintiff's Second Cause of Action. (Reply at 5.)

However, in their Reply, Defendants still raise arguments that Plaintiff's conviction of a violation of Vehicle Code section 12500 definitively determines that Defendant Kacalek had probable cause for the arrest.  (*Id.* at 3.)  Plaintiff's only citation for this proposition is to the Second Restatement of Torts.  (*Id.*)  Plaintiff does not explain why this principle should still apply where California has passed a law that explicitly states that a conviction for a violation of the Vehicle Code "shall not be res judicata or constitute a collateral estoppel of any issue determined therein in any subsequent civil action."  Veh. Code § 40834.  By passing this statute, it appears California took specific steps to prevent a conviction from precluding later civil cases.  This is precisely what Defendants argue for here.  In the absence of any authority applying this rule in the context of a violation of the Vehicle Code, the Court declines to find that Plaintiff's conviction of a violation of section 12500 conclusively establishes that Defendant Kacalek had probable cause at the time of the arrest.

Based on the above, summary judgment is inappropriate as to Plaintiff's Second Cause of Action on the ground that Defendant Kacalek had probable cause.

**B.  *Heck* Bar**

Based on Plaintiff's conviction of a violation of section 12500, Defendants assert that Plaintiff is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), from bringing a claim alleging Defendant Kacalek lacked probable cause.  The Court finds that the *Heck* bar does not apply.  Under *Heck v. Humphrey*, 512 U.S. 477 (1994), individuals are not permitted to recover damages via section 1983 "for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff proved that "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."  *Id.* at 486–87.  However, as noted in the Court's Order on Defendants' Motion to Dismiss, *Heck* focused on incarcerated individuals and identified that habeas is the remedy for

10

challenging a conviction.  *See id.* at 481–83 (distinguishing between civil rights and habeas actions and restating that habeas is the remedy for "state <u>prisoners</u> attacking the validity of the fact or length of their <u>confinement</u>" (emphasis added and citations removed)).  As Plaintiff was not subject to any term of confinement,  habeas would be unavailable to him.

Likely responding to the Court's note in the prior order, Defendants argue that *Heck* should still apply because a lack of probable cause would "necessarily implicate his conviction . . . ."  (Mot. at 9.)  They also state that "*Heck* applies to convictions, not prison terms."  (Reply at 4.)  Defendants cite to *Chico Scrap Metal, Inc. v. Raphael*, 830 F. Supp. 2d 966, 971 (2011), and *Alatraqchi v. City & Cnty. Of San Francisco*, No. 99-cv-4569-PJH, 2001 WL 637429 (N.D. Cal. May 30, 2001), which uses the phrase "conviction or sentence" in describing the *Heck* bar and applied the bar in cases where there was no custodial term imposed.  But *Chico* and *Alatraqchi* do not interrogate whether there is a custodial requirement for application of *Heck*. Defendants also cite *Nuno v. County of San Bernardino*, 58 F. Supp. 2d 1127 (1999), but there the district court recognized that *Heck* might only apply to those "in custody[,]" *id.* at 1133 n.4, as part of *Heck*'s function "to channel litigation relating to state convictions, and the sentences and confinement resulting therefrom, into the federal habeas corpus process."  *Id.* at 1138–39.

More helpful are the Ninth Circuit's string of cases following *Spencer v. Kemna,* 523 U.S. 1 (1998), particularly the decisions in *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002), *Guerrero v. Gates,* 442 F.3d 697 (9th Cir. 2006), and *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015).  Following the lead set by *Spencer*, *Nonnette* recognized that the *Heck* bar did not apply where a prisoner brought a section 1983 action claiming his due process rights had been violated while he was in custody, and he was subsequently released, preventing him from pursuing habeas relief.  316 F.3d at 875.  *Guerrero* subsequently limited *Nonnette* on the basis that the plaintiff there had been incarcerated for two years and never challenged his conviction during the

11

time he was incarcerated.  *Guerrero*, 442 F.3d at 702.  The *Guerrero* court stated that "in following the reasoning of the concurrence in Spencer, we have emphasized the importance of timely pursuit of available remedies . . . ."  *Id.* at 704.  Most on point for the Court's purposes in this case, *Lyall* addressed whether the *Heck* bar applied to an individual who was in custody for two days and later convicted only of an infraction.  The *Lyall* court found that the *Heck* bar still applied, relying heavily on *Guerrero* and the fact that Plaintiff did not pursue a direct appeal of his conviction.  807 F.3d at 1191–92, 1192 n.12 ("Cortez has never sought to invalidate it through direct appeal or post-conviction relief. He is thus barred by *Heck*.").

Here, Plaintiff's situation presents similarities to *Lyall*, as it is very likely Plaintiff is unable to obtain habeas review as he was convicted of only an infraction with no custodial sentence.  However, unlike the plaintiff in *Lyall*, Plaintiff did seek appellate relief from his conviction.  (DSUF ¶ 48.)  Plaintiff lost this appeal, but his attempt to appeal his conviction distinguishes his case from *Lyall* and places him outside the remedy exhaustion limitation of *Guerrero*.  Defendants suggest that Plaintiff failed to take other steps to invalidate his conviction, but only vaguely state that "there are procedural mechanisms by which he could have had his alleged wrongful conviction expunged or reversed."  (Reply at 4.)  Defendants fail to identify what these "procedural mechanisms" were or establish that they were available to Plaintiff.

Under the circumstances here, where Plaintiff was convicted only of an infraction, habeas relief was unavailable to Plaintiff, and Plaintiff has exhausted all appellate options known to the Court, the Court finds that Ninth Circuit precedent counsels against application of the *Heck* bar.[7]

---

[7] The Court notes that other courts have separately called into question application of the *Heck* bar to violations of the California Vehicle Code based on the limitations of traffic violation proceedings.  *See Toland v. McFarland*, No. 2:21-cv-04797-FWS-AGR, 2023 WL 8884397, at *14 n.6 (C.D. Cal. Sept. 18, 2023).  The Court does not decide here that *Heck* is inapplicable on this basis.

## C. Qualified Immunity

Defendants also contend they are entitled to qualified immunity for Plaintiff's First and Second Causes of Action.  Summary judgment on this basis is precluded by the same factual disputes identified above.  *See supra* Discussion I.A.1–2.  Defendants are entitled to qualified immunity if they establish that they reasonably believed they had probable cause on July 13 and July 20.  *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2021).  However, where there are genuine issues of underlying fact relevant to the qualified immunity determination at summary judgment, "the case must proceed to trial."  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (1993).  Here, there are genuine disputes of fact that go directly to the reasonableness of the officers' belief that probable cause existed.  As detailed above, there are factual disputes about where Plaintiff was located when he was observed by Defendant Roberts on July 13, what Defendant Kacalek knew regarding Plaintiff's vehicle registration status on July 20, and the basis for Defendant Kacalek's belief that Plaintiff had established residency in California.  These questions are bound up in credibility determinations and questions of fact that are core jury functions.  As such, summary judgment on qualified immunity grounds is not appropriate at this time.  However, this denial is without prejudice to Defendants arguing they are entitled to qualified immunity after the jury has made the relevant factual findings.

## D. Statutory Immunity

For the same reasons the Court denied summary judgment above on the grounds that Defendants had probable cause and are entitled to qualified immunity, the Court also denies summary judgment as to statutory immunity under California Penal Code section 847.  The material questions of fact that exist prevent the Court from finding that Defendants had reasonable cause to cite and arrest Plaintiff.[8]

---

[8] The Court notes that some courts have expressed doubt or outright rejected that immunity under section 847 applies to actions brought under section 1983.  *See Buccola v. Boucher*, No. 22-cv-03877-NC, 2024 WL 5453171, at *3 (N.D. Cal. Mar. 22, 2024) ("[T]he Court is skeptical that [section 846(b)(1)] provides immunity against federal constitutional claims."); *see also Miller v. Schmitz*, No. 1:12-cv-00137-LJO-DLB, 2012 WL 1609193, at *10 (E.D. Cal. May 8, 2012) ("'[I]mmunity  under § 1983 is governed by

## II.  Search and Seizure of Property Claims

Plaintiff brings three claims alleging the unreasonable search and seizure of Plaintiff's property during the July 20 incident.  Plaintiff's Fourth Cause of Action alleges a violation of the Fourth Amendment in connection with Defendants Kacalek and Robert's search of Plaintiff's vehicle; Plaintiff's Fifth Cause of Action alleges a violation of the Sixth Amendment in connection with Defendant Kacalek's seizure of Plaintiff's vehicle; and Plaintiff's Sixth Cause of Action alleges a violation of the Fourth Amendment in connection with Defendant Roberts' seizure of the baby chickens in Plaintiff's vehicle.  Defendants contend that they are entitled to summary judgment on all claims, as each of these searches/seizures was reasonable, and because they are entitled to qualified immunity.

Defendants' arguments for summary judgment as to the Fourth and Fifth Causes of Action against Defendant Kacalek are unpersuasive.  The parties agree that these claims would not be viable if it were determined that Defendants had probable cause to arrest Plaintiff on July 20.  (Mot. at 15–16 n. 7; Opp'n at 1.)  However, as discussed above, whether Defendant Kacalek had probable cause to conduct the search is subject to factual disputes that must be resolved by the jury.  Defendant Kacalek's subsequent search and seizure of Plaintiff's vehicle are predicated on the validity of Plaintiff's arrest.  As such, it is impossible to grant summary judgment at this stage as to these claims.

Plaintiff's claims against Defendant Roberts present a slightly different situation.  The undisputed facts are that Defendant Roberts arrived after Plaintiff had been handcuffed and placed in Defendant Kacalek's vehicle.  (DSUF ¶¶ 32–38.)  Defendant Roberts was called to the scene by Defendant Roberts, who had observed the baby

federal law; state law cannot provide immunity from suit for federal civil rights violations.' Thus, Officer Schwarz is not entitled to immunity under California Penal Code Section 847." (internal citations omitted) (emphasis in original) (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000))). Plaintiff cites other cases where section 846 has been applied for constitutional claims. (Reply at 4.)  For the reasons stated above, the Court does not need to reach these questions.

chickens in plain view inside Plaintiff's vehicle. (*Id.* ¶ 38.) The facts presented to the Court suggest Defendant Robert's sole involvement in this July 20 incident was taking the baby chickens from Plaintiff's vehicle. (*See id.* ¶ 39.) There are no facts or evidence that suggest Defendant Roberts was involved in any search of Plaintiff's vehicle. As such, summary judgment is appropriate for Cause of Action Four as to Defendant Roberts. Plaintiff's Sixth Cause of Action, concerning Defendant Roberts' seizure of the chickens, is reliant on the lawfulness of the underlying arrest. As such, summary judgment is inappropriate as to that claim prior to the jury's determination of the facts.

The Court also declines to find at this point that Defendants are entitled to qualified immunity. As with Plaintiff's claims related to his arrest, Defendants may well be entitled to qualified immunity based on their reasonable belief that probable cause existed. The reasonableness of this belief is tied up in factual questions that must first be determined by a jury.

As to Defendant Roberts specifically, Defendants also cite cases concerning the seizure of neglected animals. There appears to be no evidence that the chickens in question were neglected. However, the Court does recognize that Defendant Roberts' position in connection with the July 20 incident is unique due to the presence of the live animals. While the Court finds that the factual disputes mentioned above still preclude summary judgment, it does so with the acknowledgment that the ultimate qualified immunity analysis for Defendant Roberts may extend beyond traditional Fourth Amendment considerations.

**III. Excessive Force**

In Plaintiff's Third Cause of Action, Plaintiff alleged that in arresting him, Defendant Kacalek used excessive force in handcuffing Plaintiff. As noted in the Court's prior order, claims that a plaintiff was injured by the usage of handcuffs are not usually sufficient to state a claim for excessive force. (*See* ECF No. 50 at 9.) Courts have recognized that such claims can be cognizable when there is a demonstrable

injury or the officer ignored complaints about tight handcuffs.  *See Reyes v. City of Santa Ana*, 832 Fed. Appx. 487, 490–91 (9th Cir. 2020) (collecting cases).

Plaintiff has not established a genuine dispute of material fact as to his claim that Defendant Kacalek used excessive force during the July 20 incident.  The core of Plaintiff's claim is that Defendant Kacalek's usage of handcuffs resulted in Plaintiff breaking his wrist.  (*See* Opp'n at 10.)  Plaintiff's only evidence to support this is (1) his statement that his wrists were swollen after he was handcuffed, (2) that swelling in his wrist remained for many months, and (3) that when he saw his primary care physician, their examination concluded he might have a "healed-over" wrist fracture from some time in the past.  (*See* Opp'n at 10-11; *see also* Gettings Decl.)  Based solely on this evidence and without the assistance of experts, Plaintiff concludes that Defendant Kacalek's usage of handcuffs caused Plaintiff to break his wrist.  Plaintiff's theory behind this is so uncertain that Plaintiff himself admits that "[t]he exact mechanism of the fracture is unknown."  (Opp'n at 11.)  These allegations do not create a genuine dispute of material fact.

Claims that handcuffing amounted to excessive force require more than "nominal injuries" from the handcuffing.  *Reyes*, 832 Fed. Appx. at 491.  Plaintiff has not presented evidence that establishes that he was injured by the handcuffs applied by Defendant Kacalek.  *See id.*  As such, there is no genuine dispute of material fact and Defendant Kacalek is entitled to judgment in his favor.[9]

Defendant also filed a Motion to Exclude the Testimony and Opinion of Plaintiff's Expert Debra Erikson.  (*See* ECF No. 71.)  However, as the Court grants summary judgment in Defendant's favor, this Motion is denied as moot.

**IV. Deliberate Fabrication of Evidence**

Defendants move for summary judgment on Plaintiff's Eighth and Tenth Causes of Action based on deliberate fabrication of evidence.  (Mot. at 21–22.)  Plaintiff does

---

[9] As the Court grants summary judgment on this ground, it need not reach the issue of qualified immunity.

not contest that summary judgment is appropriate as to these claims.  As such, the Court grants Defendant summary judgment as to these claims.  *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (2005).

**V.  Punitive Damages**

Plaintiff has sought punitive damages in connection with his claims.  (SAC at 15.)  "It is well established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others."  *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (internal citations and quotations omitted); *see Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  Defendants now request that the Court strike or dismiss Plaintiff's punitive damages request on the basis that Plaintiff has not shown that Defendants were "motivated by evil motive or intent" or acted with "reckless or callous indifference" to Plaintiff's constitutional rights.  (Mot. at 23–24.)  "A [section] 1983 punitive damages claim is subject to summary adjudication where plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions."  *S.T. by and through Niblett v. City of Ceres*, 327 F. Supp. 3d 1261, 1283 (E.D. Cal. 2018) (internal citations and quotations omitted).

At this stage of the proceedings, the Court will not grant summary adjudication as to Plaintiff's punitive damages request.  The undisputed evidence showed that Plaintiff had repeated encounters with Defendants Roberts and Kacalek over the course of three weekends and that those encounters had been contentious.  (*See* DSYF ¶¶ 12, 32).  In addition, Defendants continued to discuss Plaintiff and these encounters at other times (*see* id. ¶¶ 12, 23), from which a jury could reasonably infer Defendants had specifically focused on Plaintiff.  There also remains a dispute as to whether Defendants had probable cause to cite Plaintiff for various alleged violations on two different days a week apart.  Viewing these facts in the light most favorable to Plaintiff, a reasonable juror could conclude that either or both of Defendants Kacalek

17

and Roberts acted with reckless disregard or malice to Defendant's Fourth Amendment rights. Accordingly, Defendants' Motion as to Plaintiff's punitive damages request is denied.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (ECF No. 72) is GRANTED IN PART and DENIED IN PART as follows:

   a. Defendants' Motion is DENIED as to:

      i. Plaintiff's First Cause of Action as to Defendant Roberts;

      ii. Plaintiff's Second Cause of Action as to Defendant Kacalek;

      iii. Plaintiff's Fourth Cause of Action as to Defendant Kacalek; and

      iv. Fifth and Sixth Causes of Action in their entirety.

   b. Defendants' Motion is GRANTED as to:

      i. Plaintiff's First Cause of Action as to Defendant Kacalek;

      ii. Plaintiff's Second Cause of Action as to Defendant Roberts;

      iii. Plaintiff's Fourth Cause of Action as to Defendant Roberts; and

      iv. Plaintiff's Third, Eighth, and Tenth Causes of Action in their entirety.

   c. Defendants' Motion is also DENIED as to Defendants' Request for Summary Adjudication as to Plaintiff's request for punitive damages.

2. Defendant's Motion to Exclude the Opinion and Testimony of Plaintiff's Expert Debra Erikson (ECF No. 71) is DENIED AS MOOT.

Dated:  February 4, 2026

_Daniel J. Calabretta_

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

18